**No. 79SA517**

**Betty L. Cesario, Earnest E. Clemons, Donald H. Goede, Alden L. Marvel, A.W. Mullan, Jr., and Lawrence Strom, Jr., v. The City of Colorado Springs, a municipal corporation, The City Council of the City of Colorado Springs, and as members of The City Council of Colorado Springs, Robert Isaac, Thomas I. Anderson, Michael C. Bird, Leon Young, Peter M. Susemihl, Katherine N. Loo, George James, Margaret Vasquez and Mary Kyer and State of Colorado**

(616 P.2d 113)

Decided September 2, 1980.                    Rehearing denied September 24, 1980.

460

Cleveland, Wengler & Robbins, P.C., Edward D. Cleveland, Frank E. Robbins, for plaintiffs-appellees and cross-appellants.

Gorden D. Hinds, City Attorney, M. Allen Ziegler, Jr., Deputy, for defendants-appellants and cross-appellees.

J.D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, William Morris, Assistant Attorney General, for Intervenor.

Blake T. Jordan, Staff Attorney, for Colorado Municipal League, amicus curiae.

*En Banc.*

JUSTICE ERICKSON delivered the opinion of the Court.

This is an appeal to review a proceeding to unilaterally annex property by the City of Colorado Springs. Plaintiffs, Betty Cesario, et al., filed suit in the district court seeking a determination that defendant, City of Colorado Springs (City), exceeded its jurisdiction and abused its discretion in annexing an area southwest of the City. The district court held that the annexation was null and void, and ruled that any additional annexation proceedings must start anew. We affirm.

On September 12, 1978, the City commenced a unilateral annexation proceeding by adopting a resolution of intent to annex an area southwest of the City, including portions of the Broadmoor Hotel, Inc. (Broadmoor). Section 31-12-106(2) of the Municipal Annexation Act of 1965, as amended (section 31-12-101, *et seq.,* C.R.S. 1973 (now in 1977 Repl. Vol. 12)) (Act), regulates the unilateral annexation of property which is partially surrounded by the annexing municipality, and provides:

"Annexation of unincorporated areas which have had more than two-thirds boundary contiguity with the annexing municipality for a period of not less than three years. The eligibility requirements of section 31-12-104 shall not apply to annexations pursuant to this subsection (2). The governing body of any municipality may annex such area by the following procedure: Adopt a resolution setting forth the intent of the governing body to annex the area described in said resolution if, after notice and hearing as provided in sections 31-12-108 and 31-12-109, the governing body finds and determines that the proposed annexation complies with the provisions of section 31-12-105. Such findings and determinations shall be in writing and shall be included in the minutes of the governing body's meeting. The governing body, by ordinance, may approve such annexation."

Notice was given pursuant to section 31-12-108, and a public hearing was set by the City Council for November 9, 1978 on the proposed annexation. Attached to the notice was a legal description of the area that was to be annexed.

At the November 9 hearing, the city engineer presented a map which identified the proposed southwest annexation area and four other annexations which had occurred during the previous three years. These recently-annexed areas were situated between the southwest annexation area and the City limits as they existed prior to the recent annexations. The city engineer testified that, on the basis of his measurements and his method of computation, the proposed southwest annexation area had over two-thirds

boundary contiguity with the City for at least three years as required by section 31-12-106(2).

The plaintiffs appeared at the hearing in opposition to the annexation. They contended that, as a result of a different method of computation, there was less than the two-thirds boundary contiguity with the City for three years. The plaintiffs also alleged that the Broadmoor had not consented in writing to the annexation as required by section 31-12-105(1)(b) of the Act. After hearing all testimony, the City Council adopted a resolution setting forth findings of fact and conclusions thereon regarding the southwest annexation area. This resolution found that there was more than two-thirds boundary contiguity with the City for at least three years, and that the annexation of the southwest area was authorized. The City Council also adopted Ordinance No. 78-219 on first presentation, annexing the southwest area to the City. The district court found that the City Council then adjourned the hearing *sine die*.

On November 22, 1978, the City Council, without additional notice pursuant to the statute, amended Ordinance No. 78-219 by revising its legal description to remove a portion of City-owned park land from the annexation area. This action reduced the noncontiguous boundary so that, regardless of the method of computation, a contiguous boundary in excess of two-thirds was obtained. The amended ordinance was then passed by the City Council on second presentation.

At a meeting on December 12, 1978, the City Council adopted Ordinance No. 78-219. The effective date of the annexation was December 31, 1978.

On January 4, 1979, plaintiffs instituted this action in the district court, seeking a determination that the City had exceeded its jurisdiction and abused its discretion in annexing the southwest area. Plaintiffs also sought an order to require the City to proceed with an annexation election under section 31-12-112, a declaration that the Annexation Act is unconstitutional, and a general finding that the southwest annexation was null and void.

The district court ruled that unilateral annexation of the southwest area by the City, purportedly accomplished by Ordinance No. 78-219, as amended, was void, and that any additional annexation proceedings must start anew. The court found that plaintiffs had standing to raise the issue of Broadmoor's consent to the southwest annexation, and further declared that the Broadmoor had not consented to the subject annexation as required by section 31-12-105(1)(b). The court also ruled that a petition for annexation election filed by the plaintiffs on December 11, 1978, was properly rejected by the City Council. The district court concluded that it was unnecessary to rule on the constitutionality of the Annexation Act.

The City appealed to the court of appeals, seeking a reversal of the district court's judgment that the southwest annexation was void.

Plaintiffs cross-appealed, seeking a declaration that the petition for annexation election was proper and should not have been rejected. We accepted jurisdiction and took certiorari pursuant to C.A.R. 50. For the reason set forth below, the judgment of the trial court is affirmed.

I.

We first consider whether, at the hearing on November 9, 1978, the southwest annexation area had more than two-thirds boundary contiguity with the City of Colorado Springs for not less than three years. We hold that it did not.

At the hearing, plaintiffs and the City disagreed over the correct method of measuring boundary contiguity. Plaintiffs presented evidence which demonstrated that, when the four areas annexed within the previous three years were excluded from the measurement, the total boundary of the southwest annexation area measured not less than 141,813.53 feet. The portion of that measurement which had been contiguous to the City for at least three years was 93,578.36 feet. The measurements on boundary contiguity were based upon figures furnished by the city engineer's office and were not disputed by the City. Under the plaintiffs' method of computation, the areas where the southwest annexation area was contiguous to the four recently-annexed areas was excluded as part of the contiguous boundary. This computation resulted in 65.99% boundary contiguity with the City for at least three years, or less than the required two-thirds. Under cross-examination, the city engineer admitted that, using such methods for ascertaining boundary contiguity, the southwest annexation area did not have more than two-thirds boundary contiguity with the City for three years.

The city engineer's office measured the boundary contiguity of the southwest annexation area by including the four recently-annexed area in its measurement. Essentially, the City's measurements followed the boundaries of those four areas where they were contiguous to the City limits; these measurements were included as part of the contiguous boundary of the southwest annexation area. Under this method, the total measurement of the southwest area was 141,215 feet, and 97,266 feet were contiguous to the City. This computation resulted in 68.88% boundary contiguity — more than the two-thirds requirement of section 31-12-106(2). In support of its method, the City asserts that, since the southwest annexation area and the four recently-annexed areas are contiguous to each other, the southwest area is contiguous to the City limits along the boundary between those four areas and the City. We disagree and conclude that the trial court was correct in adopting plaintiff's computation of boundary contiguity.

In reaching our decision, we note that no cases have interpreted the "unincorporated area" requirement of section 31-12-106(2) to include any areas other than those which are the subject of the annexation

proceeding. In fact, the converse is true. The two-thirds boundary contiguity requirement was applied to the "subject property" and the "parcel to be annexed" in *Board of County Comm'rs. v. City & County of Denver,* 37 Colo. App. 395, 548 P.2d 922 (1976); to the "territory proposed to be annexed" in *Pomponio v. City of Westminster,* 178 Colo. 80, 496 P.2d 999 (1972); and to the "area to be annexed" and the "territory to be annexed" in *Adams v. City of Colorado Springs,* 308 F. Supp. 1397 (D. Colo.), *aff'd,* 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970). For the purposes of a unilateral annexation, the plain meaning of "unincorporated area" cannot logically include areas which are not being considered for annexation or areas which have already become part of the annexing municipality. We conclude, therefore, that the measurements for determining boundary contiguity under section 31-12-106(2) must be confined solely to the perimeter of the area proposed to be annexed.

Further, section 31-12-106(2) requires that the requisite boundary contiguity exist with the annexing municipality for a period of not less than three years. Since it is undisputed in the record that the four recently-annexed areas had not been part of the City for the requisite period of time, plaintiffs were correct in computing portions of the southwest annexation area that are contiguous with these four areas as part of the noncontiguous boundary. Accordingly, at the November 9, 1978 hearing, the southwest annexation area did not have the requisite boundary contiguity for the required period of time to be eligible for a unilateral annexation.

## II.

We next address the propriety of the City's amendment of the legal description of the southwest annexation area at the meeting of the City Council on November 22, 1978. At that meeting, a portion of City-owned property was excluded from the legal description of the proposed annexation area, thereby reducing the noncontiguous boundary so that the requisite contiguity existed regardless of the method of computation. The City contends that the contiguity requirements need not be established until the final enactment of the annexation ordinance, and therefore, that its amendment of the legal description after the November 9, 1978 hearing was proper.

In support of its position, the City argues that section 31-12-106(2) does not require an annexing municipality to make findings and determinations with respect to boundary contiguity at a findings hearing. We do not so read the statute. The requirements of two-thirds boundary contiguity for at least three years are the very basis upon which a City's power to initiate a unilateral annexation proceeding exists. The purpose of notice and hearing under the Annexation Act is to give interested persons an opportunity to be heard "upon any matter to be determined by the governing body." Section 31-12-109. Allowing an annexing municipality to alter a proposed annexation area by adding or subtracting areas from its

legs description at any time up to the final passage of the annexation ordinance defeats the purpose of the statute.

█    Under voluntary annexation proceedings, the legislature had specifically provided for findings of eligibility at a hearing pursuant to sections 31-12-104 and 31-12-110. However, we conclude that the eligibility requirements for an involuntary, unilateral annexation proceedings pursuant to section 31-12-106(2) are not to be given any less effect or importance by their inclusion in section 31-12-106(2) itself. The specific requirements set forth in section 31-12-106(2) do not defeat the general requirement that findings regarding an area's eligibility for annexation must be made at a hearing. Any other interpretation would effectively destroy the only protection interested parties have in assuring that a unilateral annexation is properly accomplished. We concluded, therefore, that, in a unilateral annexation pursuant to section 31-12-106(2), the legislative body with annexing authority must make specific findings at a hearing that the proposed area to be annexed has had the requisite boundary contiguity for the requisite period of time before such an area is eligible for annexation by the governing body. *See e.g., Board of County Comm'rs. v. City & County of Denver, supra; Pomponio v. City of Westminster, supra;* and *Adams v. City of Colorado Springs,* 178 Colo. 241, 496 P.2d 1005 (1972). These decisions specifically addressed the issue of whether there was sufficient evidence in the record to sustain a municipality's finding of boundary contiguity at a hearing. Further, the City Council's actions in the instant case suggest that it considered a finding and determination of the requisite boundary contiguity to be necessary at the November 9 hearing. The agenda of that hearing contemplated such a necessity, and the City Council did in fact make such a finding, albeit erroneously, in the resolution it adopted at the close of the hearing.

█    Once the hearing had been adjourned, the City Council was without jurisdiction to amend Ordinance No. 78-219 by changing the legal description of the southwest area without making specific findings for the newly-described area at an additional hearing. The meeting of the City Council on November 22, 1978, during which the amendment was made, was not a new hearing that had been scheduled with proper notice. It also was not a continuance of the hearing on November 9, which had been adjourned *sine die.* Rather, it was a proceeding at which no evidence was heard and no findings were made regarding the compliance of the newly-defined area with the provisions of section 31-12-106(2).

Accordingly, we hold that the City's purported amendment of the southwest annexation area at its meeting on November 22, 1978, was invalid. The only area eligible to be annexed was that which had been considered for annexation at the initial findings hearing on November 9, 1978. As described in part I of this opinion, the original southwest annexation area did not meet the contiguity requirements of section 31-12-

106(2). Therefore, the district court holding that the annexation proceeding was null and void and must start anew is correct.[1]  Judgment affirmed.

---

[1] Because of our resolution of this case, we need not address other issues raised on appeal and cross appeal. We recognize, in this long and on going dispute, that annexation proceedings for the same general area may be initiated again. Therefore, we are compelled to note that plaintiffs do not have standing to raise the issue of the Broadmoor's consent to this annexation. The issue of standing arises solely from differing interpretations of a 1973 contract between the Broadmoor and the City. The plaintiffs are not entitled to litigate the terms of a contract to which none of them were parties. Only the Broadmoor would be sufficiently aggrieved by the City's action to have standing to challenge the terms of their contract with the City in a unilateral annexation proceeding.